We have four cases on our calendar this morning. Well, three patent cases, two from district courts, one from the PTAB, which will not be argued, and then a veterans case. First case is patent case ICON Health & Fitness v. Polar Electro, 2017-18-86. Mr. Hottinger. Good morning, Your Honors. May it please the Court. The 271 patent has been through two reexamination proceedings. When the Patent Office allowed claims to issue from those reexamination proceedings, it found that the inventive concept found in the 271 patent was the provision of options. These options are provided to specific users based on an evaluation of multiple users' data. When you say the inventive concept, they weren't considering 101, though, were they? They weren't considering 101. They were considering 102 and 103. But it does reflect the important part of the claims, the inventive concept that was found in the claims. What they said was it was a concept that wasn't anywhere present in the prior art. That doesn't necessarily mean it's an inventive concept within the meaning of 101, does it? Well, under the Court's recent holding in Berkheimer, even if something's not disclosed in the prior art, it doesn't mean that it's not necessarily well understood, routine, or conventional. So when the district court... Right, but there are two different kinds of possible distinctions, it seems to me, at least two, between inventive concept in 101 world and whatever is in 102, 103. One is the level of public recognition of it, and that's the point that was made in either Berkheimer or Atrix. I'm not sure which one. Maybe both. But there's a different notion, which is that it might not be, even though it's innovative, to use a non-statutory word, I guess like inventive, actually, it might not be the right kind of innovation. So the fact that something is in or not described in prior art may ultimately be immaterial to whether it is the kind of inventive concept that counts, which is on the right side of the line separating the abstract, the law of nature, etc., from whatever it is that 101 covers. Why is this idea of providing options simply not the right kind of thing to constitute an inventive concept, even if it was, in fact, written into a thousand pieces of prior art on the wall of everybody in the industry? Well, this particular concept was a problem that existed in the prior art systems. The 271 patent, through the use of the options, came up with an inventive combination of elements to provide those options. These are just informational elements? Well, it's an improvement in the technology. Define the options for me that you're focusing on. So the options can be anything that would assist a user to accomplish a goal or a performance that's been set under the system and the methods of the 271 patent. So you say anything. I mean, this is the problem. Well, it can be anything that's related to physical characteristic data. That's the point, data. It's passing data back and forth, and that's abstract. Well, it's doing more than passing data back and forth. It's a new way of managing the data, collecting the data and managing the data so that these options can be provided at the end of the day. It's through the use of the associative databases. How does the option work? Give me an explanation of how it works in a way that's separate and apart from just the transmission of data. So once the granular level data is received at the associative databases from the sensors, it's then put through three separate associative databases. One is a sensor database. There, when the information arrives at that database, it's specifically correlated with a sensor. That sensor is given a unique identifier. The sensor is then described, and the type of data that's coming from that sensor is also described. So what's the output? Give me an output on the option. The output is an example would be you're in 10th place in this competitive race amongst your peers. If you run faster or you lengthen your stride, then you can move from 10th place to, say, 5th place. What's the deficiency that you claim that the patent was addressing in the prior art? So that's found in Appendix 30. It's column one of the patent lines 30 through 44, and that talks about the prior art systems were only capable of gathering information from one user and providing information to one user. And the specification of the patent says that there was no way prior to the 271 patent to gather objective measurements from multiple individuals, compare that, and then provide a specific option to a user in the system. Your problem is this patent is almost 20 years old in terms of application date, and the law changed. We're now dealing with Supreme Court precedent that holds that abstract ideas are not patent eligible even when you add computers and sensors and other well-known physical objects for dealing with them. Well, at the time of the application of the patent, using an associative database in this context, fitness tracking context, certainly was not well-known or conventional at the time. Is the word fitness in the patent? The word fitness is not in the patent, but physical characteristic data is throughout the patent, and it talks about sensors that are commonly associated with exercise, such as heart rate. But it doesn't even say sensors that are commonly associated with exercise. It says sensors, and then it talks about using those sensors in the context of sensing whether or not your audience is bored or sensing whether or not your audience is paying attention or sitting up straight. It doesn't say anything about exercise. It does talk about characteristics that are associated with exercise, like overexertion. But not in those words. No, not in those words, but the patent was understood by those of ordinary skill in the art, and certainly the patent office is one that arises in the fitness industry. In the reexamination proceedings, the prior art references that were used and traversed by Icon were all fitness. It's enough for us to say that a patent that never mentions fitness, certainly never mentions fitness tracking, is directed to a fitness tracking device just because later, much later, in a reexam, someone cites to a fitness tracking prior art as something that would disclose some of the principles. That doesn't mean that it is one and the same. That certainly does not exclude the fitness tracking industry. If we find it's not directed to fitness tracking, does that mean that you lose, that your patent is abstract? No, I don't believe so. I don't know in what other industry that this has a practical application other than fitness because it's related to physical characteristic data of individuals. All of the examples in the patent relate to something else. You're saying you don't know what application it would have, but you define in the patent an application that has nothing to do with fitness tracking. There are certainly examples in the specification that address the classroom setting. The inventive elements here, the combination of inventive elements, are the use of the biometric sensors. The patent teaches that you can sense diverse physical characteristics from people in remote locations. You could be sensing brainwave activities from somebody exercising in Europe while simultaneously measuring the respiratory rate of somebody in South America. The patent teaches that this data has to be maintained at a granular level so that when it reaches the associative databases, it can be reconciled, combined, and then put into a format where the associative databases can make a meaningful recommendation of options to the users. Sounds clever. Sounds clever, but that's not the point here. Just like Newton's laws and Einstein's equation was clever, but if they're abstract, they don't pass muster. Addressing the record at the district court level, there were facts that this was not an abstract idea, that it did contain inventive concepts. Column one that we looked at earlier, that there was an inventive concept. How about looking at the claim, receiving data, determining an evaluation, providing a notification. Yes, but there's more to those claims, which is at the end, which was the inventive concept from the reexaminations, which is the providing of multiple options for users to select from. That could not have been done at the time without the inventive combination of the biometric sensors and the associative database. You're into your bottle. You can continue or save it as you wish. I'll save it. Thank you. Mr. Fugger. Good morning, Your Honors. May it please the court. The 271 patent discloses and claims the abstract idea of gathering data, analyzing that data, and providing a notification about that data. The asserted claims are indistinguishable in kind from electric power and that line of cases, as you noticed. I'd like to address a couple of what was just discussed. Your Honor asked about the output from options. The options are discussed in the patent specification. It's at Column 5, Appendix 32. It's one of the examples that is given about how the abstract idea of gathering data and then providing feedback. At Appendix 32, Column 5, starting around line 54, this is discussing the options. Suppose five possible endings are available for the play, two of which are happy endings and three of which are sad endings. If the audience appears or is determined to want a happy ending, the audience may be provided with the two options having happy endings for the play and so on. Yes, there are different uses, but even if it's true that it doesn't say fitness tracking, if you're measuring blood pressure and exertion and heart rate and you have sensors that are doing that, why couldn't it have an application in the fitness tracking? I wouldn't dispute that it can have an application to fitness tracking. The fact that the claims could be read on fitness tracking only emphasizes how broad the claims are and really underlines the preemption concern here. Someone asked if it were directed towards fitness tracking. If that were in the patent, I don't think that would change the analysis here. It would still be collecting data, analyzing that data, and then providing a notification, providing results of that data, just like electric power. Whether that's collecting data from multiple power grids or multiple power grids around the country from geographically disparate locations, that's no different than collecting data from two individuals in a classroom or two individuals wearing a tracking device, a fitness tracking device. So you think fitness tracking devices are unpatentable generally? No, I would not have that opinion. If this were a device, and I'm clearly working in hypothetical here, but if this were a device that was a heart rate monitor and it was an advancement in the technology of a heart rate monitor, that potentially could be patentable and patentable subject matter under the current case law. That is not what we have here with the 271 patent, which clearly is directed to the abstract idea of collecting, analyzing, and distributing information, utilizing conventional components in their conventional manner. What about the sensors that are disclosed? Is that not a more technical aspect to this patent? The sensors that are disclosed are, again, conventional components. For instance, on appendix 34, this discusses the sensors in column 9. The discussion really starts at about 42, but I'm going to jump down to 56, because this lists the sensors here. I'm sorry, which column are you in? Column 9, and I jumped down to line 56. This discusses many kinds of sensors. For instance, there are many kinds of sensors that might be used. Potential sensors include heart rate monitors, blood pressure monitors, respiration rate, temperature or heat detectors, pressure sensors, load sensors, motion detectors, acceleration sensors, brain wave monitors, etc. There's really no limit to what kind of sensors may be used, and the patent does not address sensors as being an inventive concept. But your friend on the other side argues that what was missing in the prior article was the ability to take this data from sensors on more than one person and then analyze that data. That may have been missing in the prior article, and this patent did make its way out of re-exam. We don't dispute that, but I think as this court has noted in synopsis, a novel abstract idea is still an abstract idea. What if one had a claim to a method of determining physical fitness consisting of applying a blood pressure monitor, determining heart rate, determining temperature, period. They're all physical steps. There are no mental steps involved, aside from whether it's obvious or not. Would it meet 101? Is this a method or is this a divide? A method of view, that's hard to say. A method consisting of several physical steps, nothing mental. I think a method consisting of physical steps could be patent eligible. I have a hard time seeing that one as being patent eligible. That's because of 103 or 102. Isn't that Berkheimer? Affecting temperature? I believe Berkheimer was directed to improving a computer. I'm sorry, exergen. I think Berkheimer is instructive here. If we're going to discuss whether or not something is a factual issue, we don't have factual issues here because in Berkheimer, we looked at this patent specification and it described this inventive concept. In that case, there was a description of this inventive concept. At least in Berkheimer, some of the claims recited the inventive concept. Here we don't have that. ICON has argued that options are this inventive concept because options are what got the patent out of re-exam. The patent does not describe options as an inventive concept. The patent describes options as options, as options to an end of a play. It's really a potential limitation that could be attached to one of the embodiments. ICON also discusses granularity of data, using granularity to go to databases where data is controlled or parsed or whatever it may be at a database. Granularity is not in the claims and it's not taught in the specification. To the extent that ICON is arguing that associative databases are an inventive concept, again, databases, whether they're associative or not, are again not in the claims. The patent teaches that databases or hardware, software, pretty much anything can be used. It's not limited to specific hardware or specific software. In fact, the patent is explicit about there are many ways, a wide range of programming techniques as well as general purpose hardware systems, dedicated controllers. This is in column 14, appendix 36. But similar discussion is at column 12, column 10 about general purpose computers, really off the shelf technology. I think I would just end and say the assertive claims are no less abstract and no more inventive than the claims in electric power. But electric power didn't have the options disclosure. It had three steps, this has four. Well, electric power had, at least the representative claim, had things beyond giving results. It had updating the measurements and deriving an indicator of reliability. That was from the representative claim. If you're assessing a power grid and say the power grid is overheating or it's unstable and you get this, the option is to shut it down or not shut it down. While options were not claimed, I don't think the claims in electric power and here are identical word for word. But as abstract ideas go, they're almost indistinguishable in kind. Thank you, counsel, no one ever loses points by not using up all their time. Thank you for your time. When the district court characterized the 271 inventions, it did so based on a canceled claim. It didn't focus on any of the claims that included the inventive aspect of the provision of options. That was a foundational error that was committed by the district court, which bled into its application of the ALICE framework and really caused it to overlook the inventive concept of the biometric sensors and the associative databases in order to achieve the provision of options. Just responding to my colleague saying that granularity is not taught by the 271 patent. It is taught by the 271 patent. Appendix 31, patent column 4, lines 50 through 53 talks about the data being received from the sensors not being processed. Is that some notion of granularity in the claims by construction or words? Yes, I think so. If we were to look at, for example, claim 80, it talks about the remote server making a determination. Within that remote server would be the associative database that would do this processing. There could be some claim construction issue there that would address the granularity issue. Is that responsive to your question? Yes, thank you. It also talks about and teaches these diverse sensors sensing different types of information in different formats. That's why it has to be kept at a granular level until it reaches the associative database. My colleague also addressed that the specification talks about general purpose computers and components. ICON doesn't dispute that, but I would clarify for the court that when it discusses that it's talking about the server that houses the associative database. ICON's not claiming that it has some sort of inventive server, but that it's the associative database and the way that that maintains the data structure so that it can then associate an option with a specific user. Then I would just also note that at the district court level this was a motion for judgment on the pleadings. There were factual issues that the court overlooked that should have been construed in ICON's favor would have prevented entry of judgment here. That is the portion of the specification that talks about the improvement that the 271 patent provides to the prior art declaration from an expert talking about the inventive concepts that are found in the 271 patent. On a motion for judgment on the pleadings under 12C, do declarations count? They can if the court considers the declaration, then certainly, and the court did address the declaration in the opinion. Certainly that should not have weighed that issue against ICON. Those facts that were in that declaration, the opinion that was in that declaration, should have been construed in ICON's favor. And this is, forgive me if I'm confusing cases, is this the case in which the declaration has essentially one paragraph on this, like paragraph 12, maybe almost a page long, that kind of paragraph to which the word conclusory might apply? Yes, there is one paragraph, but I guess to the conclusory point is that that shouldn't be weighed against ICON, at least that stage of the case. On the 12C motion, that should be weighed in ICON's favor. And then also, perhaps an inference, to the extent the second step of ALICE overlaps with the 102-103 analysis, the patent had been through two reexamination proceedings, that was a fact. It's part of the intrinsic record at the district court level, and the fact that there is some overlap between the second step of ALICE, the 102-103 inquiry, that should also have been an inference that was in ICON's favor and Thank you very much.